UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHO UNG MIN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SELENE FINANCE, LP, and RUSHMORE LOAN MANAGEMENT, LLC; and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 23-cv-06335-WHO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 5 |

This matter comes before the court on plaintiff Cho Ung Min's motion for a temporary restraining order and preliminary injunction to stop the foreclosure of his residence. Because he has shown (1) serious questions going to the merits of several of his claims; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that granting the relief is in the public interest, his motion for preliminary injunctive relief is GRANTED.

## BACKGROUND

Min is the owner of real property located at 7229 Shannon Park Court, South San Francisco, CA 94080 (the "Property"), which he acquired in 2004. *See* Declaration of Cho Ung Min in Support of Ex Parte Application for a Temporary Restraining Order ("Min Decl.") ¶1; *see also* Ex Parte Application for a Temporary Restraining Order ("Ex Parte App.") [Dkt. No. 5]; First Amended Complaint ("FAC") [Dkt. No. 26] ¶¶ 13-14.[1] In "summer or early fall 2020," Min was

---

[1] Min did not file a separate motion for preliminary injunction, but he did file the First Amended Complaint on February 13, 2024. Dkt. No. 26. I will consider both the operative FAC and the ex parte application in assessing Min's application for preliminary relief.

1  current in his mortgage payments when he began experiencing a financial hardship because of the
2  COVID-19 pandemic. Min Decl. ¶ 3. Around that time, defendant Rushmore Loan Management
3  ("Rushmore") approached Min regarding mortgage assistance. *Id.* ¶ 6. When Rushmore
4  approached Min, he was still current on his mortgage payments. *Id.* ¶ 7.

5  Min states that as part of these initial conversations, "Rushmore representatives assured
6  [him] that numerous customers were going on forbearance and that, at the end of the forbearance
7  term, all payments owed on the loan through the end of the forbearance plan would be added to
8  the end of Plaintiff's mortgage loan" as a "non-interest-bearing balance due on the maturity date
9  or when the loan is otherwise paid off." *Id.* ¶ 8; FAC ¶ 19. Min alleges that based on these
10 representations, he "unequivocally understood that he could stop making payments and then
11 resume his regularly scheduled payments once he came off forbearance." Min Decl. ¶ 9. As a
12 result of this understanding, Min entered into a forbearance plan and stopped making payments.
13 *Id.* ¶ 10.

14 Min took steps to regain financial security in the wake of the pandemic and was able to
15 resume his roughly $4,200 per month mortgage payment. *Id.* ¶¶ 13-15. He contacted his loan
16 servicer to resume mortgage payments. *Id.* ¶ 15. By that time, defendant Selene Finance
17 ("Selene") had taken over as his loan servicer. *Id.* But Selene refused to accept the regular
18 mortgage payment and instead demanded "the full balance owed of approximately $70,000 to
19 $80,000." *Id.* ¶ 16. Min claims that if he had known that his mortgage servicer would not honor
20 the arrangement "he would not have entered into the forbearance plan and would have arranged
21 for another solution to his temporary financial hardship." *Id.* ¶ 17.

22 Concerned about what would happen if he did not make regular payments, Min contacted
23 Selene to ask about how he should make payments. Selene informed him that his loan was in
24 "past due status" and that "even the regular monthly payments were considered partial payments,"
25 which it would not accept. *Id.* ¶ 16. Selene informed Min that the loan was in default, and it
26 would be proceeding to foreclosure. *Id.*

27 Neither Rushmore nor Selene brought Min's loan current after the forbearance agreement
28 that he entered with Rushmore reached its end. Since Selene refused his "partial payments," Min

United States District Court
Northern District of California

has pursued loan modification with Selene. *Id.* ¶ 19. But he contends that "for more than a year, Selene has lost [his] loan modification application materials and asked [him] to resubmit application materials he had resubmitted on several occasions." *Id.* ¶ 20.

Min also states that throughout the loan modification application process, he was never provided with a single point of contact that he could consistently reach to communicate about the application process, the status of the loan, or the status of his foreclosure prevention alternative applications. *Id*. He claims that he was "unable to reach his assigned relationship manager and was often transferred between different individuals with no knowledge of his account." *Id.*

All of this placed him in what he describes as a "worse position on his mortgage loan than he was in when the Covid forbearance plan began." *Id.* ¶ 23. Min claims that he "would not have gone into the forbearance plan if he knew what his loan servicer would demand at the end of the plan or that he would end up risking his home as a result of doing so." *Id.*

Selene intended to conduct a Trustee's Sale on December 27, 2023, which was enjoined when I granted Min's request for a temporary restraining order on December 20, 2023. *See* Dkt. No. 11. Selene responded to the court's Order to Show Cause, *see* Dkt. No. 22, and filed a motion to dismiss the plaintiff's First Amended Complaint, which it has since withdrawn. *See* Dkt. Nos. 26, 28, 38. Rushmore did not respond separately to the Order to Show Cause but did file a motion to dismiss, which it has also withdrawn. *See* Dkt. Nos. 30, 36. Both parties contest entry of preliminary injunctive relief.

**LEGAL STANDARD**

In order to obtain a preliminary injunction, a plaintiff must demonstrate four factors: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest."[2] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). While this is a four-part conjunctive test, the Ninth Circuit has held that a plaintiff may also obtain an injunction if it has demonstrated "serious questions going to the merits," that the balance of

---

[2] For ease of reference, I will refer to these factors throughout this Order as the "*Winter* factors."

1   hardship "tips sharply" in its favor, that it is likely to suffer irreparable harm, and that an

2   injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-

3   35 (9th Cir. 2011).[3] Injunctive relief is "an extraordinary remedy that may only be awarded upon

4   a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## DISCUSSION

## MIN IS ENTITLED TO INJUNCTIVE RELIEF

### A.    Serious Questions Going to the Merits

Min asserts several claims, including some under provisions of the California Homeowner Bill of Rights ("HBOR"). His first cause of action alleges that the defendants did not properly provide a "single point of contact," in violation of Cal. Civ. Code § 2923.7; the second asserts that Rushmore failed to properly advise him about forbearance guidelines for non-federally backed loans, in violation of Cal. Civ. Code § 3273.11; the third claims that the defendants interfered with his right to reinstate his loan in violation of Cal. Civ. Code §§ 2924(c)-(d); the fourth, fifth, and sixth causes of action allege that defendants acted in bad faith and that Rushmore negligently misrepresented the terms of its forbearance plan, and also states a claim for promissory estoppel based on his reliance on what he says were misrepresentations; the seventh cause of action alleges that Selene failed to honor his first lien loan modification or other foreclosure prevention alternative from Rushmore in violation of Cal. Civ. Code § 2924.11(g); and the eighth cause of action asserts that both defendants violated California's unfair competition law (the "UCL") by engaging in unlawful business practices, as described in claims one through seven.[4]

There are serious questions going to the merits of several of these claims. I discuss a few of them  below.

### 1.    The Effect of the Forbearance Agreement

As a preliminary matter, Selene contends that a preliminary injunction is not justified

---

[3] For ease of reference, I will refer to this interpretation of the *Winter* factors by the Ninth Circuit as the "*Cottrell* Test."

[4] Min includes a negligent misrepresentation claim against Rushmore Loan Management in the FAC, but as this cause of action did not appear in the original ex parte application for preliminary injunction, I will not consider it in ruling on the motion today.

4

1    because the text of the Forbearance Agreement that Min entered with Rushmore does not provide
2    that Min could "resume making regular payments" at the end of the forbearance period and he
3    therefore has no claims.  *See* Selene Finance's Response to OSC and Opposition to Plaintiff's
4    Request for Preliminary Injunction ("Response") [Dkt. No. 22] 2:3-6.

5          Min does not ground his claims in the text of the Forbearance Agreement.  His claims are
6    based in the misrepresentations that Min states Rushmore representatives made to him, prompting
7    him to enter into the Forbearance Agreement, and in what he describes as both defendants' failures
8    to adhere to proper communication procedures when handling his loan modification applications.
9    *See* Min Decl. ¶¶ 8-9, 16, 20; *see also* Ex Parte App. 2.

10         The Forbearance Agreement provides: "Once the forbearance is over, any suspended
11   payments will need to be repaid or otherwise accounted for through a more permanent workout
12   option." Dkt. 23-1 (Forbearance Agreement).  But the text of this agreement, signed by Min, does
13   not invalidate his claims.  Min states that a Rushmore representative informed him that at the end
14   of the forbearance period he would be able to resume regular payments and that the skipped
15   payments would be tacked on to the end of his loan.  *See* Min Decl. ¶ 8.  Min says that he
16   reasonably understood that arrangement to be reconcilable with the written Forbearance
17   Agreement and that he relied on that representative's communication when he decided to enter
18   into the Forbearance Agreement.  *Id.* ¶ 9.  He claims that "had [he] known that [his] mortgage
19   servicer wouldn't have honored the arrangement, [he] would not have entered into the forbearance
20   plan." *Id.* ¶ 17.

21         At the hearing on February 28, 2024, Selene protested through counsel that there is no
22   record of the conversations where Rushmore representatives supposedly communicated to Min
23   that the payments he missed during the forbearance period would be tacked on to the end of his
24   mortgage payment as a non-interesting bearing balance.  But at this stage, Min's declaration,
25   together with the defendants' inability to affirmatively disprove his allegations about the alleged
26   misrepresentations by Rushmore representatives, is sufficient to raise serious questions about how
27   Min reasonably understood the Forbearance Agreement.

5

### 2. Failure to Properly Provide Single Point of Contact

Min asserts several claims for violations of different provisions of the HBOR. His claim for the alleged violation of Cal. Civ. Code § 2923.7 (and his claim for UCL violations arising from the same) raises a serious question given the facts alleged.

According to Min's *ex parte* application, both defendants violated California Civil Code § 2923.7, which requires the lender to assign a Single Point of Contact ("SPOC") when a borrower requests a foreclosure prevention alternative and provide "one or more direct means of communication with that SPOC." Cal. Civ. Code § 2923.7(a); Ex Parte App. 6. The purpose of this is to "prevent[] borrowers from being given the run around." *Nasseri v. Wells Fargo Bank, N.A.*, 2015 WL 7429447-WHA, at *5 (N.D. Cal. Nov. 23, 2015) (holding that the plaintiff stated a claim where she alleged that the SPOC gave her misleading information). Min states that Rushmore's representatives "failed to carry out the duties assigned to a single point of contact by erroneously advising [Min] about what to expect regarding the status of the loan and [his] payment obligations at the end of the forbearance period." Ex Parte App. 7:12-18; Min Decl. ¶¶ 8-9. He also contends that Selene's representatives failed to carry out the duties assigned to a SPOC; he was unable to reach his assigned relationship manager, was often transferred between individuals with no knowledge of his account, and had to repeatedly resubmit application materials after Selene allegedly lost them. Min Decl. ¶ 20.

The record reveals serious questions going to the merits of this claim. Neither defendant has produced evidence showing that Min was timely provided with a SPOC in compliance with the law. Selene has produced one email that it says demonstrates that Min was assigned a SPOC, but that email only shows that in July 2023, Selene told Min that a SPOC *had been* assigned to him. *See* Declaration of Jessica Edwards in Opposition to Temporary Restraining Order ("Edwards Decl.") [Dkt. No. 23] Ex. J. This letter was sent nearly one year after Min first started trying to get loan modification. *See* Edwards Decl. Exs. D-I (showing that Min reached out to Selene asking about loan modification at least as early as June 2, 2022). It does not prove that Min was timely provided a SPOC.

Additionally, Selene offers no response to Min's allegation that he was not provided a

6

1  direct means of contact to any SPOC that he was assigned, since he was "unable to reach his
2  assigned relationship manager and was often transferred between different individuals with no
3  knowledge of his account." Reply in Support of OSC re: Issuance of Preliminary Injunction
4  ("Reply") [Dkt. No. 27] 4:17-22.  Even if Selene did assign him a single point of contact in a
5  timely manner, the record suggests that it may still have violated section 2923.7(a) by failing to
6  provide Min with a direct line of communication to that individual.

7  Selene opposes on several other grounds, but each is unconvincing. First, it argues that it
8  was not Selene's responsibility to bring the loan current at the end of the forbearance term because
9  the last forbearance term expired while his loan was still being serviced by Rushmore. *See*
10 Response 6:4-11. This has no bearing on Min's likelihood of success on a section 2923.7 claim.
11 Once Selene became Min's loan servicer, it had an obligation to provide him with a SPOC to
12 discuss loan modification requests. *See* Cal. Civ. Code § 2923.7. Moreover, even if it were not
13 Selene's obligation to bring the loan current, this does not dispose of potential claims against
14 Rushmore and is an ineffective argument against preliminary injunction.

15 Second, Selene argues that since Min did submit loan modification applications, he could
16 not have suffered from lack of a SPOC. This logical leap comes up short and the caselaw that
17 Selene cites in support is inapposite. In *Cordero v. U.S. Bank, N.A.*, the plaintiff acknowledged
18 that he was "in contact" with the loan servicer and was "able to submit an application for loan
19 modification." *Codero v. U.S. Bank, N.A.*, 2014 WL 4658757, at *5 (S.D. Cal. Sept. 17, 2014).
20 There, the plaintiff argued that section 2923.7 "impose[d] a duty on the single point of contact to
21 'describe the foreclosure process, answer questions in a timely and effective manner, and
22 [provide] updates on the status of [a borrower's] home.'" *Id*. The court in *Cordero* determined that
23 section 2923.7 did not impose so strict a duty, but rather that it requires that the SPOC "be
24 knowledgeable of possible foreclosure prevention alternatives to ensure 'the borrower is
25 considered for all foreclosure prevention alternatives offered by, or through, the mortgage
26 servicer.'" *Id*. (internal quotations and citations omitted).

27 Here, Min has not tried to read as strict a requirement into section 2923.7 as the plaintiff in
28 *Cordero*, nor has he acknowledged that he was able to successfully submit a complete loan

7

1  modification application like that plaintiff did.  Quite the contrary: Min states that Selene
2  repeatedly lost his application materials and requested resubmissions.  *See* Min Decl. ¶ 20.  And
3  Selene has provided no evidence that Min was provided with a SPOC before July 2023, over a
4  year after he started communicating with Selene about loan modification.

5        Finally, Selene contends that even if Min were deprived of a SPOC his injury was not
6  material.  The authority Selene cites in support is easily distinguishable on the facts. In *Asturias v.*
7  *Nationstar Mortgage LLC*, the court determined that the plaintiffs had not stated a viable claim for
8  a material violation of section 2923.7 because they had not provided "any information" regarding
9  date of contact, how they initiated contact, "or even from whom a foreclosure prevention
10 alternative was sought," and had not alleged any specific harm.  *See Asturias v. Nationstar*
11 *Mortgage LLC*, 2016 WL 1610963-RS, at *5 (N.D. Cal. Apr. 22, 2016).  In contrast, Min (1)
12 alleges that when Rushmore contacted him about the forbearance plan, he sought foreclosure
13 prevention alternatives; (2) has shown evidence suggesting that he was not assigned a SPOC in a
14 manner that complied with California law; and (3) has alleged the very specific harm of imminent
15 foreclosure were this preliminary injunction request to be denied.  Serious questions going to the
16 merits of his section 2923.7 claim weigh in favor of granting the preliminary injunction.

### 3. Failure to Adequately Advise About the Impact of the Forbearance Plan

California Civil Code § 3273.11(c) provides, "with respect to a non-federally backed loan, any mortgage servicer, mortgagee, or beneficiary of the deed of trust, or authorized agent thereof, who, regarding borrower options following a COVID-19 related forbearance, reviews a customer or a solution that is consistent with the guidance to servicers, mortgagees, or beneficiaries provided by Fannie Mae, Freddie Mac, the Federal Housing Administration of the Department of Housing and Urban Development, the Department of Veterans Affairs, or the Rural Development division of the Department of Agriculture, including any amendments, updates or revisions to such guidance, shall be deemed to be in compliance with this section."  Cal. Civ. Code § 3273.11(c).

Min states that Rushmore failed to properly advise him about his options at the end of forbearance in violation of federal guidance published by Freddie Mac and Fannie Mae. He cites

8

federal guidance provided by Freddie Mac and Fannie May for COVID-19 related forbearance, which includes instructions for all affected borrowers. These instructions include requiring the servicer to explain and educate the impacts of starting a forbearance account. He alleges that by "erroneously advising Plaintiff of his options at the end of the forbearance period," Rushmore "failed to adequately advise [him] on the impact that the forbearance plan would have on [his] loan" and as a result, Min now faces the loss of his property to foreclosure. *See* Min Decl. ¶¶ 7-10 (stating that it was "absolutely clear" to Min, based on Rushmore's representations, that he could "stop making payments" as part of the forbearance plan and then "resume regularly scheduled payments" once it ended); *see also* FAC ¶ 63.

Rushmore produced no evidence refuting this claim; it has only asserted that Min can produce no evidence of the communication with its representative where that representative allegedly misrepresented the terms of the Forbearance Agreement to him. The credibility of Min's assertions will be addressed at trial. There are at least serious questions going to the merits of this claim.

### 4. Violation of the UCL

To state a claim under Business and Professions Code § 17200, et seq. ("UCL"), a plaintiff must allege a given defendant engaged in an "unlawful, unfair or fraudulent business act or practice" which caused the plaintiff to suffer "injury in fact" and "lost money or property." Bus. & Prof. Code § 17204. In stating a cause of action based on an unlawful business practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1133 (2014).

As explained above, Min has raised serious questions going to the merits of several of his claims for violations of California statutes that have caused him to suffer "injury in fact" in that he is at risk of losing his home. As such, there are also serious questions as to the merits of his UCL claim to the extent that it is derived from these violations of the HBOR.

### 5. Bad Faith

The record raises serious questions about whether Rushmore breached the implied promise of good faith and fair dealing. The standard elements for breach of contract are (1) the contract,

9

1    (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage
2    to plaintiff therefrom. *See Abdelhamid v. Fire Ins. Exc*h., 182 Cal. App. 4th 990, 999 (2010). But
3    "[a] claim for breach of the implied covenant of good faith and fair dealing requires the same
4    elements [as a claim for breach of contract], except that instead of showing that defendant
5    breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the
6    plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time
7    of contracting." *Levy v. JP Morgan Chase*, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).

Min argues that since he was in a contractual relationship with the defendants via the Deed of Trust and service agreements, they had a contractual obligation to refrain from hindering his performance under the contract. He argues that the record shows that both defendants interfered with his ability to perform on the contract by misrepresenting its terms and failing to communicate properly with him about loan application, thus forcing his breach and causing his damages.

For its part, Selene responds that Min's bad faith claim cannot prevail because the Forbearance Agreement does not say what the plaintiff says it does. Selene contends that "there are simply no facts alleged showing Plaintiff entered into an agreement with Selene, what its terms were, how Selene breached them, and what damages resulted." Oppo. 11. Min counters that his bad faith claim is not based on the text of the Forbearance Agreement, but rather on the Deed of Trust, insofar as it states that: "Borrower shall pay when due the principal of, and interest on, the debt evidence by the Note and any prepayment charges and late charges due under the Note." Reply 8:16-21; *see also* Ex Parte App. 10:7-9; Compl. ¶ 77; Def's RJN (Deed of Trust, section 1). Selene argues, however, that the Deed of Trust is inapplicable to its relationship with Min, and that he has produced no "servicing contract" between himself and Selene. At least at this stage, that appears to be true.

On the other hand, Rushmore's actions as alleged by Min—approaching him about a forbearance plan, enticing him into it, and representing that his payments would be added to the end of the mortgage plan when that was disallowed by the next loan servicer—plausibly induced Min into default on the loan and interfered with his ability to make regular payments on the loan. These facts, as pleaded, raise serious questions about whether Rushmore acted in bad faith

regarding its contract with Min.

### B. Irreparable Harm

In addition to showing at least serious questions going to the merits of his claims, to obtain a preliminary injunction a plaintiff must demonstrate that he is likely to suffer irreparable harm in the absence of such relief. *See Winter,* 555 U.S. at 20. The Ninth Circuit has cautioned that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). As a general rule, a plaintiff seeking injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate" for the injury. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

"[I]t is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) (collecting cases regarding evictions and foreclosures); *see also Jackmon v. America's Servicing Co.*, 2011 WL 3667478 at *3 (N.D. Cal. 2011) ("It is undisputed that plaintiffs are harmed if they are evicted from their homes or undergo a foreclosure sale."). The harm Min faces is immediate. Selene initially communicated to Min that it would conduct a Trustee's Sale on December 27, 2023, an action that was only prevented by the TRO. Selene still intends to foreclose upon Min's home. An eviction would be extremely disruptive to Min's life, as he and his wife would be displaced from their only home and he would lose approximately $500,000 of equity in his home. Min Decl. ¶¶ 24-25. Wrongful eviction is not an injury for which remedies available at law are adequate. The risk of irreparable harm to Min weighs heavily in favor of granting the preliminary injunction.

### C. Balance of Hardships

The third *Winter* factor asks whether the balance of hardships tips in the favor of the party seeking preliminary relief. Here, it does. The harm that Min will suffer should he be foreclosed upon far outweighs the harm to defendants if that foreclosure is delayed pending the resolution of this case. Min has been attempting to resolve his delinquency by applying for various foreclosure alternative programs, and by attempting to make regular payments on his mortgage. *See* Min

11

Decl. ¶¶ 14-16, 20.  He did not stop making payments for no reason; he entered into a Forbearance Agreement that he believed was the best option for him during a difficult time, and fully intended to resume regular payments on his mortgage with Selene once that forbearance period ended. Defendants do not argue to the contrary; in fact, Selene did not address the balance of hardships argument in its response to this court's order to show cause.  The balance of hardships is in Min's favor.

### D. Public Interest

Finally, "'[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Winter*, 555 U.S. at 24 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).  There is of course some public interest in enforcing Selene's secured property interest to the extent that it is valid.  But it pales in comparison with the public interest in lenders' compliance with the HBOR, which was enacted in California "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4.

 The "public interest favors vindicating the [California] Legislature's intent 'to have individual borrowers and lenders "assess" and "explore" alternatives to foreclosure.' " *Magana v. Wells Fargo Bank, N.A*., No. C 11–03993 CW, 2011 WL 4948674, at *2 (N.D. Cal. Oct. 18, 2011) (quoting *Mabry v. Superior Court*, 185 Cal. App. 4th 201, 223 (2010)).  Given the record at this stage, the public interest favors granting Min's motion for injunctive relief.

\*          \*          \*          \*

Applying the "serious questions" sliding scale approach that the Ninth Circuit approved in *Cottrell*, I will issue a preliminary injunction to enjoin the foreclosure sale of the Property.  The serious questions raised by Min's claims, the irreparable injury he will face if the motion is denied, the balance of hardships, and the public interest all support it.

## CONCLUSION

Min's motion for preliminary injunction is GRANTED.  Defendants, their officers, agents,

servants, employees, and all persons acting in concert with the defendants or on the defendants' behalf, are enjoined from directly or indirectly initiating foreclosure proceedings on the Property pending further order of the court.[5]

**IT IS SO ORDERED.**

Dated: April 8, 2024



William H. Orrick
United States District Judge

---

[5] Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Defendant Selene has a secured interest in the property and will be permitted to proceed with foreclosure if Min's claims are ultimately denied.  Neither defendant has requested that Min be required to post a further bond and none is required.